**RECEIVED**
**IN ALEXANDRIA, LA.**

JUN 2 4 2009

TONY R. MOORE, CLERK
BY_____ DEPUTY

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

ISAAC D. McDOWELL                    DOCKET NO. 08-cv-1048; SEC. P
D.O.C.#106086

**VERSUS**                           **JUDGE JAMES T. TRIMBLE, JR.**

**CORRECTIONS CORPORATION OF**       **MAGISTRATE JUDGE JAMES D. KIRK**
**AMERICA, ET AL.**

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint (42 U.S.C. §1983) filed by Plaintiff ISAAC D. McDOWELL (D.O.C. #106086), pro se and in forma pauperis, on July 16, 2008. McDowell is an inmate in the custody of the Louisiana Department of Public Safety and Corrections (LDOC) and is housed at Winn Correctional Center (WCC) in Winnfield, Louisiana. Plaintiff seeks injunctive and declaratory relief as well as class certification; he lists seven other inmates as co-plaintiffs, each of whom has filed his own civil action in this district. The plaintiff alleges numerous violations by the defendants of the constitutional rights of WCC inmates.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## FACTS ALLEGED

McDowell is the only named Plaintiff in the instant lawsuit, but seven other WCC inmates contemporaneously filed identical

complaints in this District Court. The complaint filed by this group of plaintiffs is virtually identical to the complaint previously filed by Inmates Michael Sampson, Bobby Young, Ralph Sweat, Oscar James, Benjamin Wright, Chester Matthews, Stephen McGill, and Walter Houston.[1] The "new group" of plaintiffs, including McDowell[2], took the typed complaint of the inmates listed above, erased the names of the eight previous plaintiffs, and wrote in their own names by hand.

Named as defendants are: Corrections Corporation of America (CCA), Warden Tim Wilkinson, Deputy Warden Tim Morgan, Deputy Warden Angel A. Martin, Chief of Security Virgil Lucas, Governor Bobby Jindal, and LDOC Secretary James LeBlanc.

A.   ORIGINAL COMPLAINT

In the complaint filed by McDowell and others, it is alleged that overcrowding at WCC and certain policies and procedures of LDOC and CCA have led to the violation of Plaintiff's constitutional rights, as well as the rights of other inmates at WCC through:

1.   excessive, malicious and sadistic use of force by staff;
2.   the use of chemicals such as tear gas and pepper spray to punish or threaten inmates, sometimes administered to an entire dormitory; then, a lack of medical treatment afterward;

---

[1]Docket numbers 08-915, 08-916, 08-917, 08-918, 08-920, 08-921, 08-923, and 08-924, respectively.

[2]The other Plaintiffs listed on the Complaint are Pat A. Guidry (the "lead Plaintiff"), George Ford, Edwin Lott, Paul Robbins, Todd Aucoin, Rodney Chatman, and Hernando C. Haley.

2

3.	four and five point hand restraints used for mentally ill inmates and without cause and without proper monitoring;
4.	inmates placed in isolation for arbitrary reasons and not properly monitored;
5.	inmates exposed to unreasonable risks of harm by other inmates due to inadequate staffing and unsupervised or improperly trained guards;
6.	ignoring a known practice of "kicking out" where larger inmates force younger or more fragile inmates to give up food or personal belongings under threats of violence;
7.	placing "hits" on certain inmates and "hiring" other inmates to beat up or intimidate them;
8.	abusive and arbitrary disciplinary practices;
9.	failing to conduct disciplinary hearings;
10.	failing to investigate complaints of abuse by guards and thwarting inmates' efforts at contacting PZT (project zero tolerance);
11.	failing to provide adequate mental health care;
12.	failing to provide adequate physical health care, including vision, hearing, dental, and substance abuse treatment;
13.	lack of programs, recreational items, or activities to occupy inmates;
14.	lack of nutritional meals;
15.	failing to give inmates privacy in the bathrooms;
16.	failing to provide sufficient clothing, shoes, and linens;
17.	inadequate access to the courts; and
18.	retaliation against inmates who try to access the courts.

Of the above incidents, McDowell alleged that he was only *personally* subjected to excessive force and verbal abuse.[3]

Because the complaint provided only general and conclusory allegations, the Court ordered Plaintiff to amend the complaint and allege facts to support the conclusion that **his** constitutional rights were violated.

----

[3] McDowell's name is hand-written in a blank on paragraph 11, page 6 of Document #1-4. In the original complaint filed by the first group of inmates, the claims in this identical paragraph were attributed to Inmate Benjamin Wright.

B.   AMENDED COMPLAINT

Plaintiff was ordered to provide basic facts to support his claim.   He was not ordered to do anything that involved legal research or writing.  He was told to provide information about who violated his rights, when, where, and how.   However, Plaintiff's amended complaint basically restated the general allegations and conclusions from the original complaint.

C.   EXHIBITS

While he failed to allege facts to support his claims, Plaintiff submitted copies of requests for administrative remedy procedure (ARP) forms dated May 22, 2005, April 6, 2006, August 7, 2006, February 23, 2008, April 18, 2008, June 18, 2008, August 13, 2008, and an undated request complaining of an incident in December 2008.   Plaintiff also submitted an ARP from another inmate named Don Tran.   The ARP forms will be discussed below.

### LAW AND ANALYSIS

First, to obtain a preliminary injunction the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest.   See Planned Parenthood of Houston &

4

Southeast Texas v. Sanchez, 403 F.3d 324, 329 (5th Cir. 2005).[4] Plaintiff has not alleged a threat of continuing harm or a real and immediate threat of repeated injury in the future. See Society of Separationists, Inc. v. Herman, 959 F.2d 1283 (5th Cir. 1992)(citing Allen v. Wright, *supra*.)

Plaintiff cannot show that he personally suffers a substantial threat of irreparable injury because he has presented only those bare, vague, and conclusory allegations that were first presented by Inmate Michael Sampson and seven other inmates and then copied and filed by inmates Pat Guidry, McDowell, and several others. **A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.** See Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995); see also Sias v. Louisiana 146 Fed. Appx. 719 (5th Cir. 2005)("Sias's allegations are vague and conclusory and are therefore insufficient to establish a 42 U.S.C. §1983 claim.") (citations omitted); Elliott v. Perez, 751 F.2d 1472, 1479 (5th Cir. 1985)(A plaintiff may not plead merely conclusory allegations to successfully state a section 1983 claim, but must instead set forth specific facts which, if proven, would warrant the relief

---

[4]For a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. See Dresser-Rand Co. v. Virtual Automation Inc., 361 F.3d 831, 847 (5th Cir. 2004)(citations omitted).

sought. (citations omitted). Even after amending, Plaintiff does not allege or provide facts demonstrating or indicating that *he* was ever subjected to or personally threatened with: excessive, malicious and sadistic use of force by staff, the use of chemicals such as tear gas and pepper spray to punish or threaten, the use of four and five point hand restraints without cause or proper monitoring, placement in isolation for arbitrary reasons, exposed to unreasonable risks of harm by other inmates, "kicking out" where larger inmates force younger or more fragile inmates to give up food or personal belongings under threats of violence, having a "hit" placed on him or being "hired" to beat up or intimidate other inmates, abusive and arbitrary disciplinary practices, denied disciplinary hearings, had efforts at contacting PZT (project zero tolerance) thwarted, denied adequate mental health care, or retaliated against for trying to access the courts. Plaintiff has failed to present any facts to support the conclusory allegations of his complaint and amended complaint.

While Plaintiff failed to state who violated what right, when, and where, he submitted copies of several ARP forms, presumably as examples of the alleged unconstitutional conditions of confinement. The most recent ARP is undated, but complains of the procedure used for passing out mail at mail call. Plaintiff complains that, on December 12, 2008, the inmates gathered around the bars at the front of the tier while the officer, on the other side of the bars,

6

passed out the mail. The officer would hand the mail to the inmates standing at the bars so they could pass it to the inmates further back. Plaintiff complains that he received a Christmas card that was handed to him by another inmate. Plaintiff concludes that at some point in the past he might not have received mail because the officer may have handed it to an inmate who never gave it to Plaintiff. This claim is entirely conclusory, speculative, and does not allege the violation of a constitutional right. [Doc. 5, p.70]

Another ARP is dated August 13, 2008 wherein Plaintiff complained that the black inmates in front of him in the "chow line" received more food than he did. Plaintiff concludes that his smaller portions were determined by his race because the inmates serving the food were also black. Plaintiff threw his food away rather than eating it. Again, Plaintiff's allegation is conclusory and frivolous. [Doc. #5, p.64]

Another ARP dated June 18, 2008 states that the inmates assigned to work crew squad 9 did not have access to a bathroom. [Doc. #5, p.6] The response to the ARP explains that a new officer was temporarily assigned to Plaintiff's work crew. At 11:30 that morning, the officer who usually oversees Plaintiff's crew was alerted to the fact that the inmates had not been given a bathroom break. The officer immediately made corrective measures by securing breaks for the inmates on the crew. The officer also

instructed the new officer to insure that the inmates had proper breaks and drinking water. The inmates from then on received their proper breaks. Plaintiff has not alleged deliberate indifference by the officers, and he does not dispute the fact that corrective measures were taken and the problem resolved. Any request for injunctive relief on this issue would be moot. [Doc. #5, p.68]

In an ARP dated April 18, 2008, Plaintiff complains that he sent a request stating that he needed to mail some legal mail to this court. [Doc. #5, p.59] Plaintiff does not allege why he needed assistance in sending mail, and he does not allege that he was never allowed to send his mail. To the extent that he claims this denied him access to the court, he has not alleged that he missed any deadlines or is in imminent danger of missing any deadlines.

In an ARP dated February 23, 2008, Plaintiff complains that a doctor at LSU Medical Center ordered that Plaintiff be given a job change because working at a sewing machine did not give him enough leg exercise. In his ARP, Plaintiff states that he requested an orderly position, but Chief Lucas denied the request. Plaintiff states that Lucas is being deliberately indifferent to his serious medical need, and this indifference *could* cause Plaintiff injury. The ARP was written in February 2008, and in Plaintiff's amended complaint of April 2009, he does not allege that he has any trouble with his job assignment, suffered any injury from his job

assignment (whether or not it was ever changed), or is in imminent danger of injury from working at the sewing machine. Even if an outside doctor recommended a job that would allow Plaintiff to walk more, a disagreement between an inmate and his physicians as to what medical care is appropriate does not state a claim for deliberate indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997)(affirming the dismissal of suit as frivolous where prisoner claimed medical personnel should have tried different methods of diagnosis and treatment). Likewise, differences of opinion among physicians as to the appropriate method of treatment do not amount to deliberate indifference. See Estelle v. Gamble, 429 U.S. 97 (1976). Moreover, an inmate does not have a constitutional right to a particular job assignment. See Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir. 1995); Jackson v. Cain, 864 F.2d 1235, 1248 n. 3 (5th Cir. 1989).

Another ARP dated August 7, 2006 states an inmate approached Plaintiff in the garment factory and said that he would stick a blade in Plaintiff's ribs. The inmate showed Plaintiff what looked to be a pocket knife with a four inch blade. Plaintiff reported the incident to an officer, who said that he would report it to the shift supervisor. Plaintiff complains in the ARP that three or four days had gone by and the shift supervisor had not gone to talk to Plaintiff. Clearly Plaintiff is not in danger; almost three

9

years have passed since the threat was made, and Plaintiff has not alleged that the other inmate ever attacked him, attempted to attack him, or ever threatened him again. His claim, if not prescribed, is frivolous.

In an ARP dated April 6, 2006, Plaintiff wrote that his prescription medications had run out. Again, Plaintiff submitted no further complaints, ARP forms, or allegations regarding his being denied medication. He does not present factual allegations of a substantial threat that he will suffer irreparable injury without injunctive relief.

The final ARP is dated May 22, 2005 and states that there were nine fist fights on Plaintiff's tier in two days. He did not allege that he was involved in the fights, attacked by any other inmate, or threatened in any way. He stated, "One of us older guys are going to get hurt trying to brake [sic] up these fights." [Doc. #5, p.65]

Considering the allegations plead by the Plaintiff in the complaint and amended complaint, as well as the allegations reasonably inferred from his exhibits, Plaintiff's claims are frivolous and/or fail to state a claim for which relief can be granted. To the extent he seeks injunctive relief, he has not presented **any** factual allegations of **any** substantial threat that he will suffer irreparable injury without injunctive relief. To the extent that Plaintiff seeks monetary damages for emotional or

10

mental harm, he has not alleged that he suffered **any** physical injury. See 42 U.S.C. §1997e.

Moreover, despite the instructions in the memorandum order to amend his complaint, Plaintiff has not alleged (1) *a deprivation of a basic human need*, Helling v. McKinney, 509 U.S. 25, 31-32 (1993), and (2) *deliberate indifference*, Wilson v. Seiter, 501 U.S. 294, 303 (1991).

Finally, Plaintiff did not set forth facts that demonstrate either personal involvement or the implementation of unconstitutional policies by the supervisory defendants. See Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), *cert. denied*, 508 U.S. 951 (1993).

Plaintiff and his purported class members presented identical complaints setting forth allegations of unconstitutional conditions of confinement. Despite the opportunity and order to amend, Plaintiff did not present any factual allegations to support the conclusions presented in the complaint.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's claims be **DISMISSED as frivolous** and for **failing to state a claim for which relief can be granted** under 28 U.S.C. §1915(e)(2)(b).

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Federal**

Rule of Civil Procedure 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Federal Rule of Civil Procedure 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglas v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

THUS DONE AND SIGNED at Alexandria, Louisiana, this _____ day of _____, 2009.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE